# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# FAYETTEVILLE DIVISION

**DAMON L. WATKINS**  PLAINTIFF

V.  CASE NO. 5:18-CV-05025

**ANDREW M. SAUL,**[1] **Commissioner**  DEFENDANT
**Social Security Administration**

## OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 16) of the Honorable Erin L. Wiedemann, Chief United States Magistrate Judge for the Western District of Arkansas, filed in this case on July 2, 2019. The Magistrate Judge recommended affirming the Administrative Law Judge's ("ALJ") decision to deny Plaintiff Damon L. Watkins's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Mr. Watkins filed objections to the R&R (Doc. 17), and the Court has now reviewed the entire case *de novo*, paying particular attention to those findings or recommendations to which objections were made. *See* 28 U.S.C. 636(b)(1)(C). For the reasons stated herein, Mr. Watkins's objections are overruled, and the R&R is adopted in its entirety.

## I. BACKGROUND

Mr. Watkins filed his application for disability benefits on June 1, 2016, alleging an inability to work since November 14, 2014 (when he was age 51), due to a total left knee replacement, osteoarthritis and a "dead bone" in his right ankle, degenerative disc disease in his lower back, and carpal tunnel syndrome in both wrists. According to Mr.

---

[1] Andrew M. Saul has been appointed to serve as Commissioner of Social Security and is substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d)(1).

1

Watkins's testimony at the administrative hearing on March 6, 2017, he worked as an industrial aircraft welder from 1997 to 2010, and then he was in prison from 2010 until his release on November 14, 2014—the same date he claims his disabilities began. (Doc. 10 at 35-36). He acknowledges that during his time in prison, he did not receive any medical care. He also does not dispute the ALJ's finding that he did not engage in substantial gainful activity from the alleged onset date of November 14, 2014, to September 30, 2015, the last date that he was eligible to receive disability insurance benefits due to his lack of work history.[2] Finally, he does not dispute that he received no medical care from his onset date until the expiration of his insured status.

The ALJ was obligated to review the record, including any medical evidence Mr. Watkins submitted, to determine whether he suffered from a disability prior to the expiration of his insured status. The Social Security Act defines a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). Proving that Mr. Watkins was disabled during his window of eligibility was the main difficulty in his case, since objective proof in the form of medical records did not exist.

The Eighth Circuit has acknowledged that "[e]vidence of a disability subsequent to the expiration of one's insured status can be relevant," but only to the extent that such evidence might "help to elucidate a medical condition during the time for which benefits

---

[2] He worked for a time after his release from prison, from approximately December of 2014 through August of 2015, for a company called Airport Lube; but the money he made at this job was insufficient to qualify for disability benefits.

2

might be rewarded." *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998). In other words, any medical evidence that a claimant acquired *after* the expiration of his insured status would only be relevant to his disability claim if it helped explain a medical condition he had *before* his insured status expired. For example, if a claimant suffered a heart attack after the expiration of his insured status, all the hospital records and doctors' reports concerning the heart attack would be relevant to his claim for disability benefits *only if* the other medical records established that he had been suffering from a disabling heart condition *during the relevant time period*. *See, e.g., Milton v. Schweiker*, 669 F.2d 554, 555 n.1 (8th Cir. 1982) (per curiam).

Turning to Mr. Watkins's particular case, he admits he did not see a doctor during his period of eligibility and for many years prior to that. In fact, the first medical record in his file that describes any of his claimed disabling conditions is dated November 5, 2015— which is approximately one month *after* his eligibility for benefits expired. Nonetheless, Mr. Watkins argued to the ALJ that he was disabled during his period of eligibility due to: (1) reconstructive surgery of his left knee, (2) osteoarthritis and associated limitations related to his right ankle, (3) degenerative disc disease, and (4) carpal tunnel syndrome in his wrists. The Court will review the facts surrounding each of these conditions in turn.

Beginning with Mr. Watkins's left knee, there is indirect medical evidence in the file that he had knee surgery in 1995 "for meniscal cartilage damage" and a repeat procedure in 2003 "for mechanical locking and more cartilage loss." (Doc. 10 at 257). The details surrounding these surgeries are few, and what is reported about them comes from Dr. Charles K. Hanby's notes recorded during a visit with Mr. Watkins on February 26, 2016. The administrative record contains no primary documents concerning knee surgeries in

1995 and 2003, and there are no relevant medical records in the file before November 5, 2015.³ Accordingly, there is no medical evidence to support Mr. Watkins's complaints regarding his knee during the period of time he was eligible for benefits (November 2014 to September 2015), and for at least the decade prior to that period of eligibility.

The first knee-related medical record that appears in the file is from Mr. Watkins's visit with Dr. Hanby on February 26, 2016, nearly five months after Mr. Watkins's window of eligibility expired. During that visit, Mr. Watkins complained about his knee having "gotten a lot worse" over "the last couple of years." (Doc. 10 at 257). He also reported that he "limps more," the knee "has gotten stiffer," the knee "gets swollen" and "hurts" "after his exercises," and that these problems have caused "difficulty continuing to work." *Id.* He admitted he did not use a cane but felt it was "just harder to do things." *Id.* Dr. Hanby diagnosed severe left knee degenerative joint disease and discussed possible treatment options with Mr. Watkins, including using a cane to walk, injections, and total knee arthroplasty. Mr. Watkins was not interested in injection therapy, so the doctor discussed with him the possibility of surgery. The doctor noted that he considered surgery a "reasonable" option for Mr. Watkins, "[i]f he gets to that point . . . ." *Id.* Mr. Watkins elected to have total knee arthroplasty surgery on May 3, 2016. *Id.* at 248.

During the administrative hearing, Mr. Watkins testified about the nature of his knee condition during the relevant eligibility period. *This is the only evidence of knee-related disability for that period of time.* Mr. Watkins testified that he experienced knee pain around the time he was released from prison in November of 2014. This knee pain

---

³ There is one earlier medical record, dated October 30, 2015, but it describes an ultrasound procedure to check for gallstones. *See* Doc. 10 at 240. This record is unrelated to Mr. Watkins's disability claims.

4

worsened while he was working for Airport Lube from December of 2014 through August of 2015. He found he had trouble performing his work as a mechanic because he could not squat down due to knee pain. *Id.* at 38. He further testified that his knee condition had been severe "for a long time," "[a]t least a year." *Id.* at 41. A "typical day" for Mr. Watkins, "right around September 2015"—the month his eligibility for benefits expired—involved "a lot of pain" and "not normal pain." *Id.* at 42-43. The testimony did not go into any further detail about his condition at the time he was eligible for benefits.

Turning to Mr. Watkins right ankle complaints, he did not seek treatment for pain associated with this condition until August 24, 2016, nearly a year after his eligibility period expired. At that time, Dr. Jason H. Pleimann ordered an MRI in response to Mr. Watkins's complaints of hindfoot pain and swelling, which were described as "worse on some days than others." *Id.* at 295. Dr. Pleimann diagnosed Mr. Watkins in August of 2016 with "degenerative changes through the hindfoot joints" and "right hindfoot arthritis" and advised Mr. Watkins that his treatment options included a brace and possibly an injection. *Id.* Although the arthritis diagnosis in 2016 stemmed from a degenerative condition that presumably began months or even years before, there is no objective evidence in the record to establish the condition of Mr. Watkins's right ankle during the period of eligibility. Further, his testimony about that period of time was not particularly descriptive. When he was asked to testify about how he felt prior to September 30, 2015, he mentioned "[t]he hurting in my foot and my knee and my back," which had gone on "for some time." *Id.* at 40. He further described the pain in his ankle "around September 2015" as "really unbearable" and "not normal pain." *Id.* at 42-43. No further details were offered.

5

As to Mr. Watkins's complaint of back pain caused by degenerative disc disease, this condition first appears in the medical records on November 5, 2015. He saw Dr. Vanessa Hardin Branch that day and reported experiencing lower back pain. *Id.* at 286. She ordered Mr. Watkins to undergo an MRI of his lumbar spine, which was completed on November 17, 2015. *Id.* at 287-88. Dr. Branch diagnosed him with multilevel lumbar spondylosis, mild lateral recess narrowing and moderate foraminal narrowing, loss of disc height and T2 hyperintensity, and no canal or foraminal stenosis. *Id.* at 288. No further information appears in the record about Mr. Watkins's back pain or any debilitating effects caused by such pain, including any restrictions on his mobility. As for the time period prior to the expiration of his insured status, he offers no testimony that would assist in describing the condition of his back at that time.

Lastly, with respect to Mr. Watkins's complaint of carpal tunnel syndrome in his wrists, there is no medical evidence documenting such a diagnosis, whether before, during, or after the period of eligibility for benefits. Similarly, he did not mention carpal tunnel syndrome during his testimony before the ALJ, though he did mention that he would sometimes wake up to find his hands numb, or else feel his hands go numb during the day. *Id.* at 33.

Shifting now to the ALJ's opinion, he found that none of Mr. Watkins's claimed impairments met or equaled the severity of any impairments listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. Indeed, the ALJ noted a complete lack of any objective evidence to support Mr. Watkins's claimed conditions during the relevant time period, and the only subjective evidence he offered was in the form of testimony presented at the hearing. That testimony generally noted his knee pain,

ankle pain, and back pain during the eligibility period, without going into any detail regarding the nature and extent of the pain at that time and the impact the pain had on his ability to perform any substantial gainful activity. Nevertheless, "in consideration of the chronic, progressive nature of [Mr. Watkins's] impairments, and in an effort to afford [him] the benefit of the doubt," the ALJ assumed for the sake of argument that Mr. Watkins did, in fact, suffer from these three impairments during the applicable time period, but only to the degree that the impairments reduced his capacity to work to the "light exertional level." (Doc. 10 at 19).[4]

Then, the ALJ solicited the advice of a vocational expert who testified at the hearing that there were "light work" jobs in the economy that Mr. Watkins could perform—based on his ability to have performed them during the relevant time period—considering his age, education, and work experience. *Id.* at 22. The ALJ concluded, therefore, that Mr. Watkins was not entitled to disability benefits.

Shortly after the ALJ's decision appeared, Mr. Watkins filed his appeal, and the Commissioner responded with his own response brief. The Magistrate Judge then considered the entire appellate record and the briefs of the parties and recommended that the ALJ's decision be affirmed. In particular, the Magistrate Judge appeared to disagree with the way in which the ALJ "imputed a reduction to the light exertional level" after giving Mr. Watkins the benefit of the doubt about the nature and severity of his knee, ankle, and back complaints during the relevant time period. (Doc. 16 at 10). The R&R

---

[4] The ALJ did not find that carpal tunnel syndrome was a severe impairment. As previously noted, there was no evidence in the record that this condition was ever diagnosed by any professional at any time.

opined that "the ALJ did not commit reversible error in his RFC assessment" because his ultimate decision to deny Mr. Watkins disability benefits was correct. *Id.* at 15.

Mr. Watkins filed objections in response to the R&R. His first objection was to the Magistrate Judge's order that appeal briefs be limited to ten pages in length. His second objection was to the ALJ's assumption that Mr. Watkins retained the residual functional capacity ("RFC") to perform "light work"—given the ALJ's decision to give him the "benefit of the doubt" that his knee, ankle, and back conditions during the relevant time period were severe enough to impair his ability to work. Mr. Watkins believes that since the ALJ assumed at Step Two of the disability analysis that his combination of impairments met the test for severity, the ALJ was then obligated at Step Four to derive a medically based RFC for Mr. Watkins that was supported by expert opinion evidence. Instead, the ALJ simply opined, given the evidence in the record, that Mr. Watkins was at most only slightly impaired during the relevant period and, therefore, could have performed at least light work—even though that assumption was not supported by anything other than the ALJ's own opinion (coupled, perhaps, with the ALJ's sympathy for Mr. Watkins's *current* medical condition). Below, the Court will take up each of Mr. Watkins's objections in turn.

## II. OBJECTIONS

### A. Ten-Page Appeal Brief Limitation

Mr. Watkins's first objection concerns the Magistrate Judge's ten-page limitation on the length of appeal briefs. First, this is not a valid objection. 28 USCA § 636(b)(1) authorizes any party in receipt of a copy of an R&R to file written objections "to . . . proposed findings and recommendations . . . ." This objection clearly does not address any finding or recommendation made by the magistrate judge. Second, the objection was

waived. Mr. Watkins's counsel never filed a motion seeking enlargement of the page limitation. Third, the objection is moot, as counsel had the opportunity to offer as much argument as she wanted—unconstrained by page limitations—in her objections to the R&R, and the Court reviewed those arguments, as well as the entire case file, *de novo*. For all these reasons, the first objection is **OVERRULED**.

Because counsel for Mr. Watkins devoted a significant portion of her briefing to the Court on this page limitation, a few further comments are appropriate here. The Court disagrees with counsel's observation that imposing a page limit on briefs demonstrates "that the Court does not care what the plaintiff has to say about his or her appeal." (Doc. 17 at 1). On the contrary, a reasonable page limitation—like the ten-page one imposed by Magistrate Judge Wiedemann—tends to produce higher quality briefing by attorneys and is known to be an effective case management tool. In the Court's experience, there is no correlation between effective advocacy and lengthy briefing. An effective advocate can make a point concisely where an ineffective advocate tends to drone on for pages before getting to the point. A page limitation prompts an effective advocate to marshal her evidence and arguments and present them to the Court in the most concise, articulate way possible. Certainly, a lengthy brief may sometimes be necessary—for example, when a novel legal issue presents itself—and in such a case, a request to submit an overlong brief may be justified. In the case at bar, however, there was no reason why counsel's brief needed to exceed ten pages. The legal issues in this appeal were simple and straightforward, and the medical record was one of the briefest the Court has ever reviewed.

## B. Light Work RFC

Mr. Watkins's second objection is a substantive one, and as such, it requires more analysis. He objects to how the ALJ assumed, without the benefit of any medical recommendations as to what work limitations Mr. Watkins might have had during the period of time he was eligible for benefits, that his appropriate RFC was for "light work."

Before discussing the RFC issue at Step Four, the Court will begin its analysis by considering the ALJ's treatment of Step Two, which required an assessment as to "the medical severity of [the claimant's] impairment(s)," 20 C.F.R. § 416.920(a)(4)(ii). At Step Two, the ALJ reviewed the medical evidence substantiating Mr. Watkins's claimed impairments and noted the lack of any objective medical evidence during the relevant time period, as well as during the entire prior decade. As for the subjective evidence, Mr. Watkins's hearing testimony established, at most, that he suffered from pain related to his knee, ankle, and back during the relevant time period, and that this pain affected his ability to "squat down" or "do a whole lot of walking." (Doc. 10 at 38). The ALJ observed that, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e. medical signs and laboratory findings." *Id.* at 17. Yet the ALJ concluded that Mr. Watkins's knee, ankle, and back conditions during the relevant time period met the test for severity at Step Two.

The Court acknowledges that the standard for evaluating the severity of a claimed impairment in Step Two is *de minimus* in nature, *see Bowen v. Yuckert*, 482 U.S. 137, 154 (1987)—"but it is also not a toothless standard . . . ." *Kirby v. Astrue*, 500 F.3d 705,

708 (8th Cir. 2007). An impairment is not severe when the medical evidence of record shows that it has "no more than a minimal effect on the claimant's ability to work." *Hudson v. Bowen*, 870 F.2d 1392, 1396 (8th Cir. 1989). In the case at bar, making a finding of severity at Step Two was impossible due to: (1) the lack of objective and subjective medical evidence of an impairment or combination of impairments *during the relevant time period* and (2) the lack of evidence that such impairments affected Mr. Watkins's ability to work during the relevant time period. Accordingly, the Court believes the ALJ should have terminated the analysis at Step Two and not given Mr. Watkins the benefit of the doubt that his impairments were severe before moving on to Step Four.

Regardless, even if the Step Two determination was correct, the complete lack of objective medical evidence in the record made it impossible to perform a credible RFC assessment at Step Four. The analysis should have terminated there, if not earlier at Step Two. Without any objective medical records from the relevant time period to rely on, *no doctor* could have determined Mr. Watkins's RFC for 2014-2015. It follows that the ALJ erred in arbitrarily assigning an RFC to Mr. Watkins. This error, however, was only harmless because Mr. Watkins failed to prove he was entitled to receive disability benefits during the eligibility period. For these reasons, the Court agrees with the Magistrate Judge that the ALJ erred, but did not commit reversible error. *See* Doc. 16 at 15. The second objection is **OVERRULED**.

### III. CONCLUSION

**IT IS ORDERED** that the R&R (Doc. 16) is **ADOPTED IN ITS ENTIRETY**, and the final decision of the ALJ to deny the Plaintiff benefits is **AFFIRMED**. Judgment will enter accordingly.

**IT IS SO ORDERED** on this 29th day of August, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE